OPINION OF THE COURT
John O’C. Conway, J.
This matter originally came before me as a motion for summary judgment, made by the plaintiff and seeking judg *944 ment against each of the defendant insurance companies. The Hartford Accident and Indemnity Company (Hartford) made a cross motion for summary judgment dismissing plaintiffs complaint against it. Following oral argument on the 21st of June, 1978, it appeared that no-fault benefits were first sought from Hartford, and using 11 NYCRR 65.6 (j) (2) as a guide. A decision was rendered directing Hartford to process and honor plaintiffs claim, and further ordering said defendant, Hartford, to pay attorneys’ fees and the 2% interest as called for by the above-referred to section 65.6 (subds [h], [g]).
Hartford thereafter moved for a leave to review and/or reargue after discovering certain facts which led to a belief that the first presentation of claim was made to Interboro Mutual Indemnity Insurance Company (Interboro). This second motion was argued in chambers in Oswego, New York.
PACTS
Plaintiff, John Melito, took his car to Peters AMC Jeep, Inc. for service, and was given a certain 1973 AMC automobile to use until his car was repaired. At about 1:40 p.m. on November 28, 1977, Mr. Melito was involved in a collision on Gene-see Street in the City of Utica, New York. As the result of this collision, Mr. Melito suffered serious bodily injury, and incurred basic economic loss, as defined by the Insurance Laws of the State of New York. Hartford insured the vehicle which plaintiff was operating, belonging to Peters AMC Jeep, Inc. when he became involved in the accident, while Interboro had the coverage on Mr. Melito’s personal automobile. Plaintiff has yet to receive any no-fault benefits under the New York Comprehensive Automobile Insurance Reparations Act.
11 NYCRR 65.6 (j) (2) provides as follows: "If a dispute regarding priority of payment arises among insurers who otherwise are liable for the payment of first-party benefits, then the first insurer to whom the claim was presented by or on behalf of an eligible insured person shall be responsible for payment to such person. Any such dispute shall be resolved in accordance with the arbitration procedures established pursuant to section 674 of the Insurance Law (section 65.10 of this part).”
At oral argument on June 21, 1978 in Utica, New York, it was suggested that plaintiff first made claim to Hartford, and based on this information, the decision previously mentioned herein was rendered. In addition to various correspondence, *945 the court has since received moving papers by Hartford, an affidavit signed by plaintiff July 28, 1978, an affidavit and a memorandum by counsel for Interboro in opposition to the motion of Hartford to reargue, affidavit signed August 14, 1978 by plaintiff Antonio Fatiga, Esq., and Louis Brindisi, Esq., and affidavits of William Webb, claims manager for Hartford, dated August 18 and August 24, 1978.
Interboro has claimed that their policy does not extend coverage to a nonowned vehicle, and that section 65.6 (subd [j], par [1]) mandates that the injured operator institute a claim against the insurer of the automobile he is operating. Hartford has maintained that there is no coverage, as an indorsement in their policy which is in question states something to the effect that garage customers are not insured with regard to automobile hazzard coverage in the policy if there is other valid insurance which will suffice. Both Interboro and Hartford claimed the other received first notice of the claim, and therefore should have processed it.
The court finds that the priority provisions in the regulation which implement the no-fault law were designed for just such a situation. The only question for the court at this time is to determine what the priority is. ”[T]he ñrst insurer to whom the claim is presented by or on behalf of an eligible injured person”. (11 NYCRR 65.6 [j] [2]; emphasis supplied.) Resolution of this question must be made based on the information before the court.
Plaintiff in his July 28, 1978 affidavit states that he applied to Interboro in the first instance for no-fault benefits. Plaintiff’s August 14, 1978 affidavit details plaintiff’s recollection of his assertion of a claim. He indicates that he was informed on or about December 6, 1977 by his insurance agent that he would have to look to Interboro for reimbursement for medical bills. Plaintiff further maintains that he thereafter sought to determine and follow the proper claims procedure. Finally, plaintiff relates at paragraphs 12 and 13 of his August 14 affidavit that after rejection of his claim by Interboro, he was instructed by his insurance agent to contact Hartford, who eventually also denied payment of his claim.
Hartford’s claim manager asserts in his August 18, 1978 affidavit that his first contact with plaintiff was on January 20, 1978 when Mr. Melito visited Hartford’s office with no-fault insurance forms allegedly received from Interboro. The affidavit further states that plaintiff indicated at this time *946 that his claim had been rejected by Interboro and the court takes notice of the exhibit to the affidavit in support of motion for reargument, a denial of claim form dated January 19, 1978, said claim form from Guardian Claims Service, agent of Interboro, Mr. Webb, Hartford’s claims manager notes in his August 24, 1978 affidavit that it’s insured, E. J. Peters AMC Jeep, Inc., first learned of the accident on November 28, 1977, and that they contacted the Nackley Insurance Agency on that day. Mr. Webb further states the Nackley Agency notified Hartford the day after the accident, November 29, 1977, but that there was no mention of personal injury.
This court does not ñnd the notiñcation of the vehicle collision automatically constitutes a claim for ñrst-party beneñts. This is not to say that a formal, written claim is necessary to trigger a duty to process the claim for no-fault benefits. (11 NYCRR 65.6 [j] [2].) Yet, it seems clear that either the injured or someone acting on his behalf must make an unequivocal claim for personal injury or no-fault damages. There has been no such showing. To the contrary, Hartford’s claim manager denies any knowledge of personal injury, as the result of the collision until January 20, 1978, and the plaintiff himself maintains that he never made claim to Hartford until after the Interboro denial of claim.
Accordingly, it is now the findings of this court that plaintiff first made claim to Interboro for no-fault benefits and that said claim should properly have been processed to carry out the intent of the New York comprehensive automobile insurance regulations as set forth in the sections cited above.
Plaintiff to submit proposed order to supersede the previous order of this court, said order to grant summary judgment to plaintiff against defendant Interboro, together with interest at the rate of 2% per month from January 19, 1978, and counsel fees in the amount of $2,662.80.